**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**     Case No. 09-mc-00558-JS
-----------------------------------------------------------X
**IN RE:**                                               Chapter 7 Case 08-72840

**MOHAMMED P. SHAIKH**

                    **Debtor,**

-----------------------------------------------------------X     Adv. 8-09-08315-ast
**R. KENNETH BARNARD, as trustee of**
**Estate of Mohammed P. Shaikh,**

                         **Plaintiff,**

              **--against—**

**MOHAMMED ARIF and**

**LAILUN N. SHAIKH**
                         **Defendants.**

-----------------------------------------------------------X  **Right to Adjudication by Article III**
                                                              **Judge & Jury Trial Demanded**


## Reply to Plaintiff objection to withdrawal.


Karamvir S. Dahiya of Dahiya Law Offices LLC representing defendants respectfully submits the following as response to the objections raised by Plaintiff to withdrawal request:


1.    The plaintiff exhibits misunderstanding here,  of bankruptcy law --substantively and procedurally.


   **ABUSE OF PROCESS ISSUES:**


2.    The Plaintiff, first did not do his homework before bringing this action.  The plaintiff had all the knowledge about the

1

background and interest of the parties in the property. However, sadly and truthfully so, as I have seen in our District of New York, lot of these proceedings of chapter 5 of Title 11 are undertaken to coerce, or blackmail helpless debtors to settle with the panel trustees. Unfortunate part is that the monies recovered from proceedings such as the present one always inure to the administrative claimants i.e. the attorneys for the panel trustee and hardly anything trickles to the other unsecured creditors. The excuse taken to start the proceedings is that the unsecured creditors shall benefit from such recovery. However most of the time, they get nothing, for everything gets absorbed by the administrative claimants. Respectfully we will fight this litigious technique of the plaintiff.

1.  This case as filed is actually proper for dismissal based on inefficient pleadings and it does not comport well with the standard laid down by Supreme Court. The trustee makes only conclusory remarks. The Supreme Court has held that a plaintiff must plead sufficient facts to show the "grounds" for its entitlement to relief and that its claim for relief is plausible. *See* **Ashcroft v. Iqbal**, 129 S. Ct. 1937, 1949-52, 173 L. Ed. 2d 868 (2009) (complaint alleging government official unconstitutionally discriminated against suspect in terrorist investigation failed to plead sufficient facts to make the claim plausible, and therefore had to be dismissed); **Bell Atlantic Corp. v. Twombly,** 550 U.S. 544, 555-57, 570, 127 S. Ct. 1955, 1964-66, 1974 (2007) (affirming Rule 12(b)(6) dismissal of antitrust claim because plaintiff failed to plead

sufficient facts to show that alleged parallel conduct was done by agreement, its conclusory suggestions that the conduct was done by agreement held not to be sufficient). We are now waiting for the pleadings to be over with this Court to move for dismissal of this complaint.

2.      Here the Trustee wants to amplify, mis-create issues to make monies for themselves, although as usual the pretext is that the unsecured creditors are going to be benefited etc.

3.      Usually whenever a lawsuit is filed by the bankruptcy trustee, there is tremendous pressure created on innocent parties to settle. Most of the time the parties out of fear settle, for they do not have money to hire professionals.

4.      The Supreme Court in the matter of Twombly, noted that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." 550 U.S. at 544.
        To remedy the problem it perceived of defendants being subjected to costly discovery based on marginal pleadings, the Court took an indirect approach-- stop the offenders at the discovery gate--rather than trying to deal with the discovery process itself. This case too must be thrown out or withdrawal of reference be executed to move the entire matter to the District Court.

3.      Trustee, the plaintiff here unilaterally puts a phantom figure to the value of the house and imputes fraudulent transfer for

the debtor abandoned his interest in the property (only on the deed, he still continues to reside there and enjoying free food and comfort of a house).

**EXEMPTION ISSUE:**

4.  In a Second Circuit case, it was decided that the homestead exemption will retroactively apply. CFCU Community Credit Union v. Hayward 552 F.3d 253.  Now looking at the complaint of the plaintiff, who stepped into the shoes of the creditor by virtue of 544(b), it alleges that the debtor owned the property with two other (defendants) and that he relinquished his interest in the property.  The plaintiff further alleges that at the time of this fraudulent relinquishment of interest, there was an equity of $163,500.   I must say, that the plaintiff' speculatory guesstimate  about the value of the property is questionable.  Even if we go by false figure given by the trustee, the complaint falls short of any merit.  $163,500 equity gets equally divided among three owners, each getting 50,000 of equity state homestead exemption, so left is $13,500.  The figure of $13, 500 further splits in three parts, each entitled to $4,500.   Transfer of ones exempt interest is not fraudulent transfer.   So the trustee based on his false figure has decided to launch this adversarial proceeding for a recovery of this $4,500!

5.  First and foremost, it is reiterated that the Second Circuit has made is clear that the fraudulent transferred property is not an property of the estate. Section 542 recovery claims are appropriate for properties of the estate subsumed under 11 USC § 541. Property which left the debtor's dominion prior to the bankruptcy is not property of the estate.

6.  On the assertion that "Defendants have not answered or moved with respect to the other claims,"—it is respectfully submitted that the procedural terra as established by the Federal Rules of Civil Procedure is wide open to bring motion to request dismissal immediately upon the submission of pleadings. It is absolutely not necessary to bring all dismissal grounds in and at the stage of filing motion under Rule 12 (b).

7.  The plaintiff objects that the time to move is premature as "Withdrawal Motion is premature since discovery has not yet commenced or been completed." This is precisely the reasons that the withdrawal of reference must be exercised now, for the discovery has not yet begun and even the pleadings stage is not over. It is true that the once the parties have gone deeper into discovery then the District Courts are reluctant to exercise withdrawal, for that would be disturbing to the ongoing schedule. Here there is nothing at stake so far. Withdrawal is effected mostly either prior to the discovery or after the discovery, but here the defendants challenge the jurisdiction of the bankruptcy court.

8.      The request by the defendant is much more substantive, the defendants want this dispute adjudicated by an Article III Judge.

9.      The defendants have a right to have this dispute adjudicated by an article III Judge.

10.     The bankruptcy court has no jurisdiction if the defendants want adjudication by an Article III judge.

11.     The nature of the plaintiff demand and defense of the defendants clearly makes a case or a right to have their dispute adjudication by an Article III Judge.

12.     Constitutional mandate is in favor of the defendants' request for having the dispute adjudicated by Article III judge.

### THIS IS NOT A CIVIL DISPUTE BETWEEN GOVERNMENT AND PRIVATE CITIZEN

13.     If non debtor party wants to hear their dispute by an Article III judge , the Bankruptcy Court is has no power to force the parties to its submission.

14.     As will be seen from the following that this dispute does not fall within any exceptions to an Article III adjudication.

15.     Supreme Court guards the federal jurisdiction with explicit terms against reference of article III cases and controversies

to legislative or article I judge. In Murray's Lessee, Court caution congress against withdrawal from federal, "judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." Murray's Lessee ca v. Hoboken Land & Improvement Co. 59 U.S. (18 How) 272 (1856).

16.  "[T]here are matters, involving **public rights**, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." Id. 59 U.S. at 284.

17.  Article I courts "may be created as special tribunals to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it. The mode of determining matters of this class is completely within congressional control." Ex parte Bakelite Corp., 279 U.S. 438, 451 (1929).

18.  The underlying dispute here is not a Public right disputes nor it could be labeled in any fashion a dispute between private citizen and government.

19.  Public rights matters involving the government and private citizens are amenable to adjudication by article I judges. See Murray's Lessee.

20.     The matters involving disputes between the government and private citizens, they do not fall within the scope of Article III. See Williams v. United States 289 U.S. at 577. Willaims case was though overturned only to the extent of declaring these courts to be article III tribunals. However such declaration has not been brought on the bankruptcy court.

21.     The rational for referring these public rights dispute to legislative court does not fit well when applied to a bankruptcy matter.

22.     Rational advanced by the Supreme Court for referral of public rights dispute is that of a Sovereign Immunity. Since the United States government has sovereign immunity it may sue or be sued only if the Congress authorizes  such suit. Congress discretion to permit such suits gives them the power to have special courts for such specific purposes.

23.     Supreme Court has found historical reasons and as well Framers' intent to allow such courts. See Northern Pipeline Constr. Co. v. Marathon Pipeline Co. , 458 U.S. at 67 ("the doctrine may be explained in part by reference to the traditional principle of sovereign immunity, which recognizes that the Government may attach conditions to its consent to be sued.")

24. In Marathon case, the Court clearly stated that there is a "historically recognize distinction" between inherently judicial matters, which must be decided by an Article III court, and those that can be decided by in other tribunals. Id. at 70.

25. But 'inherently judicial matters' must be decided by article III judges. See Marathon.

26. Private rights disputes are inherently judicially and may not be assigned to legislative courts. Id.

27. Here the dispute is between two private parties and thus do not fall under the Article 1 exemption of public rights doctrine.

28. Justice Brennan in Marathon case (plurality decision) argued that the Court had previously recognized, as exceptions to Article III, only three narrow categories of "exceptional" grant of power to the executive and legislative branches: the non-Article III courts of territories an the District of Columbia; the establishment of courts-martial; and the creation of legislative courts and administrative agencies that adjudicate matters of "public" rather than "private rights." 458 U.S. 50(1982).

29. It was here in Marathon that Justice Brennan used the distinction between, "public" and "private" rights—first coined in Murray's Lessee v. Hoboken Land and Improvement Co. to restrict Congress power stating that the "private rights" cases could not be removed from Art. III courts and delegative to

the legislative courts, even if Judicial review was provided thereafter.  See id. at 86.

## BANKRUPTCY COURTS ARE
## NOT
## ADJUNCTS TO ARTICLE III COURT

30.    Inherently Judicial matters could be decided by a legislative court provided these courts are adjunct to an article III court and where the matter concerned closely to a public regulatory scheme or where benefits [of using legislative court] exceeded the disadvantages.

## SPECIALIZED FUNCTION

31.    Supreme Court approved non-article III courts for adjudication of private civil disputes in the Matter of Crowell v. Benson.  285 U.S. 22. (1932).  However it was done so only when in private law matters ultimate decision-making authority rests in Article III courts and there is a substantial oversight by an Article III court and the Article III courts must be able to decide de novo all questions of law, constitutional facts, and jurisdictional facts.

32.    Here legislative courts or agencies were reconceptualized as 'adjuncts' to Article III courts to which had been delegated certain "limited" fact-finding responsibilities.

33.  "The object is to secure within the prescribed limits of the employer's liability an immediate investigation and a sound practical judgment."  The court saw a purpose here it was to 'prompt, continuous, expert, and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task.'  Id.

34.  Congress created Article 1 courts or specialized agencies to decide particular controversies within their expertise. See Richard Fallen, Of Legislative Courts, Administrative Agencies and Article III, 101 Harv. L. Rev. 916, 935-936 (1988).

35.  The present controversy here, however entails issues regarding the New York State laws regarding the fraudulent transfers. See New York Debtor and Creditors Laws.

36.  No special expertise of Bankruptcy Court is needed here.

37.   Bankruptcy Courts to claim jurisdiction on the state fraudulent causes of action does not pass constitutional muster, as it can't pass by under the rubric of being courts for "specialized areas having particularized needs and warranting distinctive treatment," while dealing with state causes of

action.   Thus clearly bankruptcy court cannot have power to adjudicate the state law dispute in its forum as it is not entitled to full fledged constitutional recognition as legislative courts allowed to decide such matters.  See Palmore v. United States 411 U.S. 389, 408 (1973).

38.    Though the power of the trustee to commence such fraudulent transfer actions springs forth from section 544 of the bankruptcy code, it in itself  is not enough to treat this as a specialized matter. The issue at the bar does not deal with any bankruptcy specialization--it is about New York State Fraudulent Transfer Act, hardly any bankruptcy acumen is warranted here.

39.    By forcing the underlying fraudulent transfer dispute to proceed with Article I judge is virtually an impermissible designation of bankruptcy tribunal as an Article III.

**Adjunct Issue:**

40.    We saw a further expansion of permissible use of non-Article III tribunals for "inherently judicial matters" in United States v. Raddtaz. 447 U.S. 667, 687 (1980).  In this case the court dealt with the constitutionality of the use of federal magistrate to decided important issues in criminal cases as an adjunct to federal district court.   In the given case the Court concluded that because "the entire process takes place under the district court's total control and jurisdiction . . . [the Act]

strikes the proper balance between the demands of due process and the constraints of Article III.

41.     However Marathon clearly held that bankruptcy courts could not be characterized as adjuncts of Article III courts as it was held in Crowell and Raddatz cases.  Court went on explain these cases as inept for comparison bankruptcy judges powers. Especially Court found that while an agency in Crowell was limited to jurisdiction over a particular area of law, the bankruptcy courts had jurisdiction over all civil matters. Whereas the agency in Crowell could not enforce its own orders, bankruptcy courts were empowerd to exercise all of the powers of federal district courts.  Although the agency's decisions in Crowell could be set aside if not supported by the evidence, the bankruptcy court's ruling could be overturned only if there were "clearly erroneous" a much narrower basis if for appellate review. The plurality thus concluded that the bankruptcy courts "are exercising powers far greater than those lodged in the adjuncts approved in either Crowell or Raddatz.  Id at 81-86.

42.     It is important to mention here that Justice Rehnquist and O'Connor concurred in the judgment. Their position was that it was unconstitutional for Congress to vest in the bankruptcy courts broad authority to adjudicate state law matters that were only tangentially related to the adjudication of the bankruptcy under federal law. Id. at 90 (Rehnquist, J. concurring).

43.     Suggestion by the trustee's counsel that all preparation for
        the trial, motion, discoveries etc. to be conducted in the
        Bankruptcy court before sending to the District Court is
        improper way of thinking in light of laid out jurisprudence by
        the Supreme Court.

44.     Further even on federalism grounds, it is unconstitutional for
        the bankruptcy courts to hear the state law matters.   See
        Lucinda  M. Finely, Article III Limits on Article 1 Courts: The
        Constitutionality of the Bankruptcy Court and the 1979
        Magistrate Act, 80 Colum. L.Rev, 560, 582 (1980) (a pre-
        Northern Pipeline article discussing federal problems with
        according the bankruptcy courts' authority to decide state law
        matters.

45.     A legislative court is considered an adjunct of the federal
        district court if the former lacks the ability to enforce its own
        judgment.  Such is not the scene with the rulings and
        directives of Bankruptcy Court, they are enforceable at the
        peril of sanctions and other federal enforcement agencies.

**Defendant Entitlement to an Article III Court
Protection**

46.  Following the Northern Pipeline jurisdictional debacle, Congress amended the Bankruptcy Act of 1978 to make bankruptcy courts adjuncts of Article III courts when they adjudicate state law matters.  See The Bankruptcy Amendments and **Federal Judgeship Act of 1984**, Pub. L. No. 98-353, 98 Stat. 333, 28 U.S.C. §152.

47.  Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, bankruptcy judges are appointed for fourteen years terms by the United States Courts of Appeal.  The bankruptcy judges are considered as officers to the district court.  See Morrison v. Olsen, 487 U.S. 654 (1988) (upholding the constitutionality of permitting the courts of appeal to appoint independent special prosecutors).

48.  The 1984 Act divided the bankruptcy proceedings in two parts, "core" and "noncore."   Easily the core matters are those, which would easily fit in the **summary jurisdiction** prior to 1978; that is, those dealing with the debtor's property and with bankruptcy referee/judge with full authority to hear and decide.   Whereas noncore matters are more akin to those that which were **Plenary** prior to the 1978 bankruptcy act.  In noncore the bankruptcy judges are to only indulge in fact finding and conclusion of law and propose this to the District Judge for appropriate orders. A final order is not entered until after the district court engages in de novo review of any matters to which an objection was made.

49.  In a subsequent case, Thomas v. Union Carbide Agricultural

Products Co. decided 1985 ("Thomas"), Justice O'Connor, writing for the majority held, "that Congress may not vest in an non-article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." 473 U.S. 568 (1985).

    a.    Here in the given case, the dispute is between private parties. The defendants here do not consent to the jurisdiction of the bankruptcy court for a state law related issue.

50.    The court permitting legislative court for private disputes were clear about the kind of private disputes (if it were closely related to governmental activities) that could be adjudicated by article I tribunals. Bankruptcy court adjudication of a state law issue between two parties is clearly not permissible under Thomas case. See id.

51.    Immediately after Thomas case, the Supreme Court came up with another decision recognizing a legislative tribunal. The court further found the commission's authority equated comparable to those, which are exercised by agencies. See Commodity Futures Trading Commission v. Schor. 478 US 833 (1986) ("Schor").

52.    Here the court had concluded that Where the Commission

could not enforce its own orders, which instead required
federal court action, the Court concluded that the commission
served as an adjunct to the federal court in a manner
approved in Crowell v. Benson. Id.

53.     Post Marathon, there was a slight acceptance of private
        disputes being decided by legislative courts provided there
        were other safeguards like public rights issue, regulatory
        scheme and or when the orders are entered by Article III
        judges.

54.     However, Granfinanceria case brought this to a screeching
        halt and resurrected the distinction between 'public' and
        'private rights' that Thomas and Schor seemingly had laid to
        rest.  Granfinanceria, S.A. v. Nordberg, 492 U.S. 33 (1999).

55.     Justice Brennan's opinion in the case of Granfianciera, S.A. v.
        Nordberg, is very illustrative about the claim raised by
        defendant here.  Justitce Brennan instructed that, if a legal
        cause of action involves ' private rights,' then Congress is
        forbidden by Article III from placing adjudicative authority
        over that cause of action in an non-Article III tribunal: if a
        cause of action " is not a public right' for Article III purposes,
        then Congress may not assign its adjudication to a specialized
        non-Article III court lacking the essential attributes of the
        judicial power." 492 U.S. at 53 (quoting Crowell v. Benson,
        285 U.S. 22, 51 (1932).

56.    The foregoing Supreme Court judgment (though concerned
       Seventh Amendment, yet its reasoning turned on Article III)
       mandates that Congress cannot assign statutory rights of its
       own creation to such a tribunal unless those rights are vis-à-
       vis Federal Government or unless the statutory rights is
       "closely intertwined with a federal regulatory program [that]
       Congress has power to enact." Id.


57.    The defendants here now seeks not only jury trial by an
       Article III judge, they claim their constitutional right to have
       their dispute adjudged by the same judge or the Judge
       sharing the same status of Article III.


58.    Once a person have a right to a jury trial by an Article III
       judge, the entire case must move to District Court.


59.    It is highly inappropriate to split a case in two parts and have
       partial disposition by an article I judge and rest by Article III.


60.    The plaintiff here suggest that all the trial preparation,
       motions disposition, discoveries etc. could be under the aegis
       of bankruptcy judge and for the trial the case could move to
       District Court.


61.     This is a baseless proposition, for one cannot split one
       judicial process in two forums.  "Our precedents make it clear
       that the constitutional requirement for the exercise of the

judicial power must be met at all stages of adjudication. Id. at 86

62.    Further when urged to see the bankruptcy court as adjuncts and pass constitutional muster as found under case of Crowell and Raddatz, the plurality found that bankruptcy courts "are exercising powers far greater than lodged in the adjuncts approved in either Crowell or Raddatz." Id. at 86.

63.    Justice Rehnquist and O'Connor concurred in the majority judgment of Marathon case and they clearly pointed out that it was unconstitutional for Congress to vest in the bankruptcy courts broad authority to adjudicate state law matters that were only tangentially related to the adjudication of the bankruptcy under federal law. Id. at 90 (Rehnquist. J., concurring).

64.    So it is clear under Marathon that plurality and the concurrence agreed only that the bankruptcy court's jurisdiction was unconstitutional insofar as it permitted adjudication of state law claims unrelated to federal law.

65.    Supreme Court in the matter of Northern Pipeline Construction Co. V. Marathon Pipe Line Co. declared the bankruptcy courts (as under Bankruptcy Act of 1978) unconstitutional because they were legislative courts deciding private law matters. 458 U.S. 50.

66. It is to bear in mind that The Bankruptcy Act of 1978 was declared unconstitutional for it eliminated the ***summary/plenary distinction*** and gave the new bankruptcy courts jurisdiction both over property in their jurisdiction and over all other claims by or against the bankrupt. This summary jurisdiction referred to property within the bankrupt's possession or within the court's jurisdiction.  Plenary jurisdiction referred to claims regarding other claims or property, like debtor's claims against third parties were part of the plenary jurisdiction. The district courts, and derivatively the referees, had summary jurisdiction—but plenary jurisdiction could be gained only by consent of the parties. Id.at 54.

67. This Act of 1978 had accorded the new courts jurisdiction over all "civil proceedings arising under [the Bankruptcy Act] or arising in or related to cases arising under [it].  Id. at 54.

68.  Amendment of 1984 of the bankruptcy code, respectfully I submit did nothing to quell the apprehensions and objections raised in the Marathon case. Issues still linger on and it is not constitutionally permissible for a bankruptcy judge to have jurisdiction on third party when that third party wants an Article III judge.

69.  Notice that in *Granfinanciera, S.A. v. Nordberg*,  a post Marathon case, the Court found that a cause of action founded on state law, though denominated a core proceeding , was a private right. 492 U.S. 33 (1989).

70.    I respectfully submit to this court that this cause of action
       what the trustee is trying to accomplish, rooted in New York
       State jurisprudence, is not a core proceeding.   The inventory
       of core matters of clearly mentioned under 28 U.S.C. 157.
       The fraudulent conveyance as mentioned under subsection
       (H) deals only with the Bankruptcy Code created action of
       section 548. By treating this matter as a core proceeding or
       having a non-core proceeding adjudicated by a bankruptcy
       judge, the trustee is raising significant constitutional
       challenges to the rights of the defendants.

71.    Wherefore, based on the foregoing, it is respectfully
       submitted that the entire case be withdrawn to this court.

Dated: October 30, 2009
New York New York

                                    *s/karamvir s. dahiya*
                                    _____
                                    Karamvir S. Dahiya for Def.